# In the United States Court of Federal Claims

No. 09-542C
FILED UNDER SEAL: October 30, 2009
REFILED FOR PUBLICATION: November 5, 2009

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                    *
THE ANALYSIS GROUP, LLC,            *
                                    *
                Plaintiff,          *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
                Defendant,          *
                                    *
and                                 *
                                    *
SCIENCE APPLICATIONS                *
INTERNATIONAL CORPORATION,          *
                                    *
                Defendant-Intervenor. *
*** * * * * * * * * * * * * * * * * * * * * * *
```

Competition in Contracting Act, 31 U.S.C.
§ 3553(d)(3)(A); Administrative Procedure
Act, 5 U.S.C. § 706(A)(2);
*Reilly's Wholesale Produce v. United States*,
73 Fed. Cl. 705 (2006); *Planetspace Inc. v.
United States*, 86 Fed. Cl. 566 (2009);
Preliminary Injunction

 

*Thomas L. McGovern, III*, Counsel of Record, *Michael D. McGill*, who argued, *Steven Williams* with whom was *Edward C. Eich*, Hogan & Hartson, LLP, Washington, D.C., for Plaintiff.

*Kenneth D. Woodrow*, Trial Attorney, with whom were *Tony West,* Assistant Attorney General, *Jeanne E. Davidson*, Director, *Reginald T. Blades*, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., and *Liana D. Henry*, Senior Assistant General Counsel, Of Counsel, General Services Administration, Washington, D.C. for Defendant.

*James J. McCullough*, with whom were *Steven A. Alerding*, and *William S. Speros*, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, Washington, D.C., for Defendant-Intevenor.

## OPINION and ORDER

**SMITH,** Senior Judge:

Plaintiff, The Analysis Group, LLC, is before this Court seeking reinstatement of a Competition in Contracting Act automatic stay of performance pending its Government Accountability Office protest of a Task Order award to Science Applications International Corporation. Plaintiff argues that the Defendant failed to justify the General Services

Administration's decision to override the mandatory stay. In response, the Government asserts that it was in the best interests of the United States to perform the contract and that imposing a stay of performance would jeopardize the Air Force's ability to meet its ongoing national security obligations.

Before the Court are Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order and Declaratory Relief, Defendant's Responses and Plaintiff's Reply. After oral argument and careful consideration, the Court orally **DENIED** Plaintiff's Motions on September 22, 2009. This memorandum articulates that decision.

## I. BACKGROUND

The Analysis Group, LLC (TAG) is the incumbent support contractor since July 2006 to the U.S. Air Force's Deputy Chief of Staff for Operations, Plans, and Requirements, Strategic Plans and Policy Division (A5XP). (Pl.'s Br. at 1, 4.) TAG is a veteran-owned business and was performing support services for the past three years under prior Task Orders issued under competitively awarded Air Force Blanket Purchase Agreements (BPA). *Id.* Science Applications International Corporation (SAIC) and Analytical Services, Inc. (ANSER) were subcontractors to TAG on the incumbent contract. TAG personnel constituted ten percent (10%) of the total employees while SAIC and ANSER performed the balance of the 105 full-time positions. AR483. This Task Order had been extended six months and was set to expire on July 31, 2009. *Id.*

A follow-on procurement action was undertaken by the Air Force through General Services Administration Federal Systems Integration and Management Center (GSA FEDSIM) beginning with a Request for Quotation (RFQ) issued on May 21, 2009. AR484. The Task Order supports A5XP. *Id.* This division, A5XP, shapes the Air Force's policies, plans, and solutions associated with a wide range of air and space national security objectives. Specifically, A5XP oversees and supports the Air Force's and Department of Defense's (DOD) implementation and compliance with international treaties and agreements, is the executive agent for the DOD Foreign Clearance Program (FCP), and serves as the focal point for the Air Force's nuclear weapon Counterproliferation Program. AR483. In supporting these functions, the contractor supplies personnel and experts to the Air Force. *Id.* SAIC and TAG were the only two bidders on the Task Order. AR484. Both offers proposed teaming arrangements. TAG proposed teaming with several contractors, none of which was SAIC. *Id.*

On July 30, 2009, one day before TAG's contract expired, TAG received notice that GSA FEDSIM awarded the A5XP Task Order to SAIC. AR308, 311. On the same day, SAIC was informed of its award of the Task Order. *Id.* SAIC commenced performance on the next day, July 31, 2009. AR484.

On August 7, 2009, TAG filed its post-award bid protest with the Government Accountability Office (GAO) which triggered a mandatory stay under the Competition in Contracting Act (CICA). 31 U.S.C. § 3553(d)(3)(A) (2006). On August 14, 2009, GSA FEDSIM announced its decision to override the automatic stay finding that it was in the best interests of the

United States.  AR482-91.

The Determination and Findings For The Purpose Of Overriding The Automatic Stay (D&F) by GSA FEDSIM, or the override decision, held that imposing a stay of performance would jeopardize A5XP's ability to meet its ongoing obligations in the areas of "U.S. international treaties, health and welfare of Air Force and military personnel, H1N1 virus planning, troop deployments, air flight planning for U.S. military operations in Afghanistan and similar locations, Air Force Counter-Radiological Warfare capabilities, and the implementation of Toxins handling procedures and recommendations from reviews." *Id.*  In addition, GSA FEDSIM found that the services were important to the Air Force and that the United States would suffer significant and immediate adverse consequences if the stay was not overridden.  AR485.  Further, GSA FEDSIM found that there were no reasonable alternatives to an override, including finding that the Task Order could not be extended.  AR488.  With regard to cost, GSA FEDSIM found that the potential cost of proceeding with the override were far outweighed by the benefits associated with authorizing performance; and finally, it found that the impact of the override on competition and the integrity of the procurement system was justified by the circumstances.  AR489-90.

## II. DISCUSSION

Usually, the filing of a protest action by a disappointed bidder on a federal contract triggers an automatic stay of performance under CICA. 31 U.S.C. § 3553(d)(3)(C).  However, there are instances were CICA permits an agency to override the automatic stay provision provided that there is a written finding that either: (1) "performance of the contract is in the best interests of the United States;" or (2) "urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting" for the bid protest decision.  *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1287 (Fed. Cir. 1999).  Here, GSA FEDSIM found that performance of the contract was in the best interests of the United States and overrode the automatic stay. Plaintiff asks this Court to reinstate that stay.

### A. The Four APA Factors for Override Decisions

Review of override decisions are guided by the standards as set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706(A)(2) (2006), 28 U.S.C. §1491(b)(4) (2006).  Under the APA, a decision may be overturned only upon finding the agency's action to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.*  In determining whether the decision was arbitrary or capricious, four factors must be considered.  Specifically, the Court must determine whether GSA FEDSIM: (1) relied on factors that Congress did not intend it to consider; (2) entirely failed to contemplate an important aspect of the problem; (3) offered an explanation for its decision that runs counter to the evidence; or (4) offered an explanation so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  *E-Management Consultants, Inc. v. United States*, 84 Fed. Cl. 1, 4 (2008) (quoting *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

3

*B. The Four* Reilly *Factors for Override Decisions*

In past cases involving CICA override decisions, this Court has identified four factors for consideration of whether an agency properly determined to override a CICA stay.  *See Reilly's Wholesale Produce v. United States*, 73 Fed. Cl.  705, 711 (2006).  The four *Reilly* factors are: (1) whether significant adverse consequences would occur absent the override; (2) whether reasonable alternatives to override were available; (3) the potential costs of proceeding with the override relative to the purported benefits; and (4) the effect of the override on the competition and integrity of the procurement.  *See id.*  However, while these four additional factors may be helpful in analyzing the agency's override decision, they are not dispositive.

In *PlanetSpace Inc. v. United States*, 86 Fed. Cl. 566 (2009), the Court held that when considering injunctive relief in override cases, the Court should only apply the APA four-factor test for injunctive relief and not the additional four *Reilly* factors.  *Id.* at 567.  *Planetspace* held that "Congress limited the court's review on an agency's decision in a CICA override action to the Administrative Procedure Acts standards."  *Id.* This Court agrees.  Even so, if the Court applied the *Reilly* factors in this case, it is clear that GSA FEDSIM justified its override of the stay.

1. Significant Adverse Consequences Absent Override?

In its D&F, GSA FEDSIM seriously considered all of the important aspects of the contract and its need for continuity, and concluded that if required to impose the stay, such a stay would jeopardize A5XP's mission.  Specifically,  GSA FEDSIM found that significant lapses in the continuous services provided would be comprised, such as  its on going international treaties, health and welfare of military personnel, H1N1 virus planning, troop deployments, air flight planning for military operations in Afghanistan and similar locations, Air Force Counter-Radiological Warfare capabilities, and the implementation of toxins handling procedures and recommendations. Although TAG asserts that there would not be a problem with continuity since most of the current employees on the project were also on the project previously through TAG, it appears to the Court that  lapses in services could occur as TAG and SAIC no longer have a working relationship. Therefore, the decision--that significant adverse consequences would likely occur absent the override--was not an unreasonable conclusion.

2. Reasonable Alternatives to Override?

Plaintiff further argues that reasonable alternatives did exist, mainly, that the Air Force could have extended Plaintiff's contract through various means.  Plaintiff asserts that the decision not to extend the contract was based on a number of faulty assumptions and, therefore, was unreasonable. Although the Court agrees that on its face Plaintiff's argument does have some merit, the bottom line is that GSA FEDSIM, after reviewing the information it had received and the interviews it had conducted, concluded  again that the continuity of the contract would be in jeopardy resulting in an increased risk to essential Air Force operations.  While it is certainly possible that continuity might not have been threatened by an extension of TAG's contract, it is by no means a logically required conclusion.  The Court is unable to say that the agency's concerns were unreasonable in light of the

working relationship issues.  This is sufficient to hold that the agency's decision was not arbitrary or capricious.

### 3. The Potential Cost of Override and Impact on the Procurement System?

With regard to the last two prongs, potential cost of the override and impact on competition and the integrity of the procurement system, the Court again holds that the agency's decision was reasonable.  However,  Plaintiff does raise an issue that the Court feels it must address, that is, the argument that award was intentionally timed to foreclose the Government's options. Here, the contract was awarded to Intervenor one day before the expiration of Plaintiff's contract.  It is clear that this left the Defendant with no choice but to override the stay in order for continuity of the contract and for the safety and protection of the United States.  Although the Defendant gives its reasons for the lateness of the award, the Court suggests that in the future GSA FEDSIM awards contracts in a more timely manner in order for the bid protest process to be preserved.  The Government's delay also raises questions about the integrity of the process.  While there is no evidence of specific bad intent here, a pattern of such late awards would raise troubling issues.

*C. Injunctive Relief Denied*

Lastly, the Court addresses Plaintiff's request for injunctive relief.  In order to obtain a preliminary equitable relief, a party must demonstrate: (1) a substantial likelihood of success on the merits; (2) specific, irreparable harm; (3) the balance of the hardships tips in its favor; and (4) that the preliminary injunction is in the public interest.  *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003).

Even though it seems to the Court that it would have made more sense for the Defendant to extend the previous Task Order, the Court cannot say that the decision was arbitrary and capricious in light of the balance of delay.  The possibility of delay was not insignificant. If the Court were to award injunctive relief it would cause an immediate work discontinuity.  The length of time for TAG to reassemble its team is unclear, which would leave many of A5XP's critical functions, as discussed above,  without support. These concerns, therefore, favor the denial of injunctive relief as the balance of the hardship weighs in favor of the Defendant.  Further, even if it is ultimately found by the GAO that TAG is entitled to the award, the balance of the hardships weighs in the agency's favor.  More damage would be done to the Government by a stay that was not overridden when circumstances justified an override, than to the Plaintiff by an overridden stay that was followed by a reinstatement of Plaintiff's contract.  In one case, Plaintiff loses money for a limited period and perhaps some staff.  In the other case, the Government could lose critical continuity.

## III. CONCLUSION

For the reasons set forth above, the Court hereby **DENIES**  Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Declaratory Relief.  The Court further denies all other Motions as moot.  In light of the representations made by counsel during the telephone status conference on September 22, 2009, the Court hereby **DISMISSES** the case.

Plaintiff filed a motion for reconsideration during the interval between the oral ruling and the present written opinion.  Plaintiff's focus is correct in its statement of the APA standard, noting that the phrase "or not in accordance with law" is also part of the review the Court must give to the override decision.  In this case, however, the Court believes that the two standards, *arbitrary and capricious* and *not in accordance with law*, lead to the same conclusion.  The reason for this is that the CICA's command is for "reasonable alternatives" to exist, not just "alternatives."  The Court must analyze "reasonable" in the same light as other judgment decisions made by the agency.  If the statute were to say that all documents were to be written in black ink, it would not be a question of reasonableness whether the agency complied.  It would be a fact proven by observation.  When it comes to a reasonableness issue, the standard is whether a reasonable agency official would have done the same in the existing circumstances.  This is, in fact, the arbitrary and capricious standard.  Thus, the Court considers the two standards as identical in this case.  In other cases, the standards may be quite different in their results.  For this reason, the Court must **DENY** Plaintiff's Motion for Reconsideration.

The Clerk is directed to enter judgment accordingly.

It is so **ORDERED**.

s/ Loren A. Smith
LOREN A. SMITH
Senior Judge